# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 12 B 81963 |
| | ) | Chapter 7 |
| Miriam L. Moy, | ) | Hon. Judge Thomas M. Lynch |
| | ) | Hearing Date: Mon., Sept. 26, 2016 |
| Debtor. | ) | Hearing Time: 9:30 a.m. |

### MCHENRY SAVINGS BANK'S
### MOTION TO MODIFY DISCHARGE INJUNCTION

Now comes McHenry Savings Bank ("McHenry Savings"), by and through its attorneys, and moves this Court to enter an order modifying the discharge injunction in place in the above-captioned case to permit McHenry Savings to proceed with collection against Miriam L. Moy (the "Debtor"), for the purpose of recovering post-petition attorneys' fees. In support hereof, McHenry Savings states as follows:

#### BACKGROUND

1.   On March 22, 2004, Perry Moy and the Debtor executed a note in favor of McHenry Savings in the principal amount of $442,000.00 (the "Note"). The Note was secured by a mortgage (the "Mortgage") on real property located at 8220 Crystal Springs Road, in Woodstock, Illinois (the Real Property").

2.   The Note includes a clause at para. 6(E) which states "[i]f the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees."

3.   The Mortgage includes a clause at para. 14 entitled "Loan Charges" which states "Lender may charge Borrower fees for services performed in connection with Borrower's

4

default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees...."

4.     On November 17, 2009, McHenry Savings filed suit to foreclose the Mortgage (the "Foreclosure Action"). The Foreclosure Action was initiated in the Circuit Court of the Twenty-Second Judicial Circuit in McHenry County, Illinois under case no. 09 CH 2444.

5.     Sometime thereafter, the Debtor filed a counterclaim and then an Amended Counterclaim in the Foreclosure Action for actual and punitive damages against McHenry Savings alleging breach of contract and violations of the Consumer Fraud and Deceptive Practices Act found at 815 ILCS 505/10a (the "Counterclaim").

6.     The Foreclosure Action proceeded and was eventually set for trial for June 18 through 20, 2012.

7.     On April 20, 2012, Mr. Moy filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code [11 U.S.C. § 101, *et seq.*](the "Bankruptcy Code").

8.     On May 16, 2012, an involuntary petition under chapter 7 of the Bankruptcy Code was filed against the Debtor.

9.     On June 1, 2012, the state court entered an order in the Foreclosure Action and the Counterclaim striking the previously set upcoming trial dates and setting the matter for status given the bankruptcy cases of Mr. Moy and the Debtor.

10.    On August 20, 2012, the Court entered an Order for Relief in the Debtor's bankruptcy case (the "Moy Order for Relief").

11.    On January 31, 2013, the Debtor filed schedules in connection with her bankruptcy case. On Schedule D the Debtor listed her obligation to McHenry Savings as a

disputed, secured claim in the total amount of $633,507.57 with $300,406.57 being listed as unsecured. The Debtor placed a value on the Real Property of $333,101.00.

12. On March 12, 2013, the Debtor received her discharge.

13. Nearly two years after the Moy Order for Relief, on May 29, 2014, the Debtor's bankruptcy case was finally closed and the Trustee discharged.

14. On September 9, 2014, the Debtor filed a motion to reopen discovery in the Foreclosure Action and Counterclaim (the "Motion to Reopen"). The Motion to Reopen sought leave to disclose an expert witness opinion report (the "Expert Report") for the Debtor some two years after discovery in the Foreclosure Action was closed. The Debtor wanted to use the Expert Report to prosecute the Counterclaim.

15. On October 3, 2014, over the objection of McHenry Savings, the Court in the Foreclosure Action granted the Debtor's Motion to Reopen. The Debtor then commenced to prosecute the Counterclaim anew.

16. The Foreclosure Action, including the Debtor's Counterclaim, went to trial in February of 2016, after which the Court took the matter under advisement.

17. On July 19, 2016, the Court in the Foreclosure Action entered a Memorandum Opinion and Order (the "Opinion and Order") finding that (a) McHenry Savings was entitled to judgment of foreclosure, (b) there had been no breach of contract by McHenry Savings; and (c) there had been no proof of a violation of the Consumer Fraud and Deceptive Practices Act. A true and correct copy of the Opinion and Order is attached hereto as Exhibit A.

18. In accordance with the terms of the Note, and as a result of the findings in the Opinion and Order, McHenry Savings is entitled to include as its damages, the entire amount of attorneys' fees it incurred in obtaining the judgment of foreclosure. McHenry Savings admits

however, that it is not legally authorized to collect from the Debtor the amount of the attorneys' fees it incurred regarding the Foreclosure Action or the Counterclaim prior to the Moy Order for Relief because of the Debtor's discharge.

19.    However, McHenry Savings believes that it is in fact entitled to collect from the Debtor the amount of attorneys' fees that it incurred defending the Counterclaim post-petition (the "Non-Discharged Attorneys' Fees").

20.    McHenry Savings thus files this motion to modify the discharge injunction so that it may proceed to collect **from the Debtor** the Non-Discharged Attorneys' Fees due and owing it under the Note and the Opinion and Order.

### RELIEF REQUESTED

21.    Although McHenry Savings believes the discharge injunction imposed by section 524(a)(2) of the Bankruptcy Code does not apply in this situation, out of an abundance of caution, McHenry Savings seeks a modification of the discharge injunction in order to petition the Court in the Counterclaim to enter an order authorizing it to obtain a judgment and collect the Non-Discharged Attorneys' Fees.

### ARGUMENT

22.    Pursuant to section 727(b) of the Bankruptcy Code, a discharge under 727(a) of the Bankruptcy Code discharges the debtor from all debts that arose before the date of the order for relief. Section 524(a)(2) of the Bankruptcy Code, in pertinent part, provides that the discharge operates as an injunction against the commencement or continuation of an action to collect a debt as a personal liability of a debtor. "[A]lthough the Bankruptcy Code does not expressly authorize the modification of a discharge…any court that issues an injunction can

modify it for good cause on the motion of a person adversely affected by it." *In re Hendrix*, 986 F.2d 195 (7th Cir. 1993). Good cause exists here.

23. The Debtor's discharge did not invalidate the Note and Mortgage (or any of the provisions contained therein), it simply eliminated the Debtor's personal liability for the amounts due and owing thereunder. *See, e.g., Siegel v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998) citing *Johnson v. Home State Bank*, 501 U.S. 78 (1991). Specifically, the Debtor's discharge did not invalidate the attorneys' fees provisions of the Note and Mortgage any more than it invalidated the interest provisions of the Note and Mortgage. Thus, the Opinion and Order can authorize the recovery of McHenry Savings attorneys' fees due under the Note and Mortgage in the exact same way it authorizes the recovery of interest on the principal amount due under the Note and Mortgage.

24. Additionally, the Debtor is only discharged from debts that arose before the date the Court entered the Moy Order for Relief – or August 20, 2012. The Non-Discharged Attorneys' Fees, on the other hand, arose post-petition because the Debtor chose to pursue the Counterclaim after the Court had already entered the Moy Order for Relief.

25. The Ninth Circuit in *Siegel* addressed a situation similar to the one currently before this Court. In *Siegel*, Larry Siegel and his partner executed two separate notes in favor of the J.I. Kislak Mortgage Corporation ("Kislak") secured by, among other things, deeds of trust on parcels of real property. Siegel and his partner then defaulted on one of the notes. Freddie Mac foreclosed on the real property securing the first note and filed an action against Siegel in Federal Court for the deficiency. Siegel filed for bankruptcy protection before trial on that matter.

26. Freddie Mac filed proofs of claim in Siegel's bankruptcy case evidencing the amounts due on both notes and was granted authority to proceed with a foreclosure action as to the second parcel of real property. Siegel eventually obtained his discharge and Freddie Mac eventually foreclosed on the real property securing the second note.

27. However, while still in bankruptcy, Siegel and his partner brought an action against Freddie Mac and others alleging tort and breach of contract stemming from the foreclosure actions. Freddie Mac filed a motion for summary judgment arguing that Siegel's claims were barred by the res judicata effect of the bankruptcy case and requesting its attorneys' fees incurred in defending the tort and breach of contract action. The District Court agreed with Freddie Mac and awarded it its attorneys' fees.

28. In affirming the District Court's award of those attorneys' fees, the Ninth Circuit in *Siegel* reasoned that although the note which authorized the attorneys' fees was clearly entered into pre-petition, the attorneys' fees awarded to Freddie Mac arose post-petition because of Siegel's intentional post-petition pursuit of the tort and breach of contract claim.

29. The Ninth Circuit noted that by filing for bankruptcy protection "Siegel, had been freed from the untoward effects of contracts he had entered into. Freddie Mac could not pursue him further, nor could anyone else. He, however, chose to return to the fray and to use the contract as a weapon. It is perfectly just, and within the purposes of bankruptcy, to allow the same weapon to be used against him." *Siegel* at 533.

30. As the Ninth Circuit also stated, "Siegel's decision to pursue a whole new course of litigation made him subject to the strictures of the attorney's fee provision. In other words, while his bankruptcy did protect him from the results of his past acts, including attorney's fees

associated with those acts, it did not give him carte blanche to go out and commence new litigation about the contract without consequences." *Id.* at 534.

31. A few years later, the Ninth Circuit reached a similar result in *In re Ybarra*, 424 F.3d 1018 (9th Cir. 2005). "[W]e reaffirm that claims for attorney fees and costs incurred post-petition are not discharged where post-petition, the debtor voluntarily commences litigation or otherwise voluntarily 'returns to the fray'. Whether attorney fees and costs incurred through the continued prosecution of litigation initiated pre-petition may be discharged depends on whether the debtor has taken affirmative post-petition action to litigate a pre-petition claim and has thereby risked the liability of these litigation expenses." *Id.* at 1026, citing *Siegel* at 533; *see also, In re Matter of Hadden*, 57 B.R. 187 (Bankr.W.D. Wis. 1986)("If the debtor chooses to enjoy his fresh start by pursuing pre-petition claims which have been exempted, he must do so at the risk of incurring the post-petition costs involved in his acts.") and *Bennett v. Unitek Global Services, LLC*, 2014 WL 1322711 (N.D.Ill. 2014)(finding that the debtor's filing for bankruptcy did not discharge his obligation to pay the post-petition costs of a case initiated pre-petition but continued post-petition).

32. On March 12, 2013, the date the Debtor received her discharge, the Debtor here was allowed to legally disregard her personal obligations under the Note and Mortgage. On that date, the Debtor obtained her "fresh start" and was free from the over $300,000.00 deficiency judgment for which she would have been personally liable. However, the Debtor here intentionally chose to walk away from that fresh start, "return to the fray" and prosecute the Counterclaim.

33. Unfortunately for the Debtor, the Opinion and Order makes clear that she lost that gamble and 815 ILCS 505/10a(c) authorizes the recovery of "reasonable attorney's fees and

costs to the prevailing party." Worse, the Debtor continues to "double down" on that bad bet by filing a motion requesting reconsideration of the Opinion and Order. Should that motion be denied, which McHenry Savings believes it will be, McHenry Savings fully believes that the Debtor will then appeal both orders because the Debtor believes there is no risk to her for doing so.

34. Since August 20, 2012, McHenry Savings has incurred significant legal fees and expenses defending the Debtor's continued pursuit of the Counterclaim. Those fees and expenses only continue to increase as the Debtor continues to prosecute the Counterclaim. McHenry Savings has shown good cause for the modification of the discharge injunction in this case and should be authorized to proceed to collect the Non-Dischargeable Attorneys' Fees from the Debtor pursuant to the Opinion and Order and any judgments entered in connection therewith.

WHEREFORE, McHenry Savings Bank respectfully requests that this Court enter an order (1) modifying the discharge injunction imposed under section 524 of title 11 of the United States Code to permit it to proceed to collect from Miriam L. Moy those certain post-petition attorneys' fees awarded it in successfully defending the Counterclaim; and (2) granting it such other and further relief as the Court deems just and appropriate.

Dated: September 14, 2016

                           MCHENRY SAVINGS BANK


                           By: */s/ William S. Hackney*
                                One of its attorneys

William S. Hackney, ARDC No. 06256042
SMITHAMUNDSEN LLC
150 North Michigan Ave., Suite 3300
Chicago, Illinois 60601
Telephone: 312.894.3200
whackney@salawus.com

# EXHIBIT A

IN THE CIRCUIT COURT OF THE TWENTY-SECOND JUDICIAL CIRCUIT
McHENRY COUNTY, ILLINOIS

| | |
|---|---|
| MCHENRY SAVINGS BANK ) | |
| ) | |
| V ) | 09CH2444 |
| ) | |
| PERRY MOY, MIRIAM MOY, DONALD ) BREWER, CLIFFFORD LUND, DENISE ) KUZNIEWSKI, THE MULLER FIRM, ) ROGERS, FLOOD & MCARDLE, ) MIDLAND CREDIT MAAGEMENT, ) INC., UNKNOWN OWNERS & NON- ) RECORD CLAIMANTS ) | **F I L E D** JUL 19 2016 KATHERINE M. KEEFE McHENRY CTY. CIR. CLK. |

## MEMORANDUM OPINION AND ORDER

INTRODUCTION.      On November 17, 2009, McHenry Savings Bank (MSB) filed suit to foreclose a residential mortgage on the marital home of Perry Moy and Miriam Moy, located at 8220 Crystal Springs Road, Crystal Lake, Illinois. Miriam Moy (Miriam) counterclaimed for actual and punitive damages for breach of contract and for violations of the Consumer Fraud and Deceptive Practices Act [*815 ILCS 505/1*][1]. The case was tried by the court on February 2-4, 2016 and taken under advisement pending this decision.

FACTS.      On March 22, 2004, Perry and Miriam Moy refinanced the first mortgage on their marital home at 8220 Crystal Springs Road, Crystal Lake with MSB for $442,000.00 [*Plaintiff's Exhibits 1, 2*], pursuant to an order of court entered in their pending divorce case [*02DV58*]. The refinancing was ordered so that the parties could pay off certain outstanding debts. Perry Moy made all of the mortgage payments until he testified that he was unable to afford them. Perry stopped making the mortgage payments which resulted in a default on the mortgage, and gave rise to the present foreclosure complaint.

In early 2008, Perry Moy made a verbal agreement with MSB Executive Vice President James Marinangel that, in lieu of full mortgage payments, he would make payments of

---
[1] A count alleging violation of the implied contractual covenant of good faith and fair dealing was dismissed with prejudice.

1

interest and escrow amounts only for a period of six months commencing in March 2008. During that time, the mortgage loan would be regarded as current. Miriam Moy was not only not a party to this verbal arrangement but also not contemporaneously advised that it had been made. The only memorial of this agreement in bank records is in the notes kept as a part of the loan file.

In May 2008, Miriam Moy attended a meeting at MSB with Marinangel to discuss the loan defaults and what could be done to cure them. No mention was made during this meeting of the Perry Moy/Marinangel interest-escrow-only agreement. A week after the meeting, Marinangel sent Miriam Moy letter to "...correct a misstatement..." [*Plaintiff's exhibit no. 15*] and explained the terms of the oral agreement between him and Perry Moy. Interest plus escrow payments only would be accepted by MSB in lieu of full payments until August 1, 2008, when full mortgage payments were expected to resume. No further payments were made on the mortgage and MSB filed the instant action on November 17, 2009. Notwithstanding the Perry Moy/Marinangel agreement, MSB's computerized loan servicing program continued to send notices of loan delinquencies to Miriam Moy at the residence address.

Between the refinancing and the filing of the foreclosure complaint, Perry Moy took out several loans in his own name and the name of his business, Plum Garden Restaurant. He personally guaranteed the business loans. Although loan proceeds were applied directly to one or more of Perry Moy's other loans or debts, none of the proceeds of any of these loans was applied to the home mortgage delinquency. In one instance, the loan balance of $50,000.00 after payment of outstanding obligations was paid directly to Perry Moy. Nothing was applied to the home mortgage debt either by the bank or Moy.

In two other instances, payments received by the bank were applied loans other than the delinquent home mortgage.

MSB contends that it is entitled to a judgment of foreclosure on evidence of the signed note and mortgage and testimony of Perry Moy that his payments on the loan had stopped. Miriam Moy also testified that she did not personally make any payments on the mortgage.

Miriam Moy contends that she has been defrauded by MSB by its entry into the interest-escrow-only agreement with Perry Moy without notice to her, by sending inaccurate billing or loan statements, by making additional loans to Perry Moy without requiring payment of any part of the loan proceeds to the home mortgage debt, and by not applying loan payments to the home mortgage debt.

ANALYSIS.              MSB is clearly entitled to a judgment of foreclosure. The mortgage on the property at 8220 Crystal Springs Road, Crystal Lake, Illinois has been in default since 2008. The testimony, although simple, is clear. The Moys signed a note and mortgage for $442,000.00 and failed to make the required installment payments on the loan. The loan is now in default. There is no claim of fraud in the execution of the note and mortgage to refinance the existing home loan. None of Miriam Moy's claims of fraud

2

or breach of contract, even if proven, can either vitiate the validity of mortgage or excuse the defaults.

Miriam Moy's complaints about MSB's actions do not rise to the level of either breach of contract or consumer fraud. And even if they did, there is no evidence of any proven, lawful damages on either claim. Section 2 of the Consumer Fraud Act provides that "deceptive acts or practices...or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact...in the conduct of any trade or commerce are hereby declared unlawful [*815 ILCS 505/2 (West 1998)*]. Section 10a (a) of the Act authorizes...private causes of action for practices proscribed by section 2. Section 10a(a) states, in pertinent part: "Any person who suffers actual damage as a result of a violation of the act committed by any other person may bring an action against such person." [*815 ILCS 505/10a (a) (West 1998)*]. To prove a private cause of action under section 10a (a) of the Act, a plaintiff must establish: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception. [*Oliveira v Amoco Oil Co., 201 Ill.2d at 149, 267 Ill.Dec. 14, 776 N.E.2d 151, Avery v. State Farm Mutual Auto. Ins. Co. 216 Ill.2d 100, 835 N.E.2d 801, 296 Ill.Dec. 448 (2005)*].

The agreement by MSB to accept interest and escrow payments only for a six-month period was not a deceptive act or practice. Similarly, neither was the follow-up letter of May 10, 2008. There was nothing false or misleading in the letter. True, the forbearance agreement between Perry Moy and James Marinangel lacked formality, but there is no evidence that MSB reneged or breached this arrangement. The fact that Miriam Moy continued to receive erroneous billing statements claiming past due payments of principle and interest and other penalties is simply evidence of sloppy or shoddy billing practices. The fact remains that MSB honored its obligation under the agreement and did nothing to enforce its mortgage until after the forbearance period had expired. Simply stated, there is no evidence of any kind of fraud or misrepresentation whatsoever or any other type of conduct that could support relief under the Consumer Fraud Act.

Moreover, the lack of formality in the interest/escrow only agreement probably prevented the change in any other formal banking practice of MSB. There was no evidence that any other officer, committee or board approved this arrangement. There was no written document setting for the terms of the agreement and signed by the parties. The most that was done was the entry of a note in an activity log regarding the agreement. None of this amounts to as deceptive act or practice.

Miriam Moy's complaint for breach of contract must also fail. In order to recover, first, a proper and adequate complaint based upon breach of contract must allege the existence of the contract purportedly breached by the defendant, the plaintiff's performance of all contractual conditions required of her, the fact of the defendant's alleged breach, and the existence of damages as a consequence. Moreover, plaintiff must allege and prove the existence of facts indicating an offer, acceptance and consideration [*Martin-Trigona v.*

3

*Bloomington Federal Savings & Loan Association (1981), 101 Ill.App.3d 943, 946, 57 Ill.Dec. 348, 351, 354, 428 N.E.2d 1028, 1031].*

Here MSB made two agreements, one to loan money as evidenced by the note and mortgage and the other to forbear the collection of the note and mortgage for a six-month period, as evidenced by the note in the bank's activity log and the May 15, 2008 letter to Miriam Moy. MSB made no other agreements. Yet, Miriam Moy alleges eleven other "contractual breaches". There is neither an allegation of an offer relative to those actions nor an allegation or proof that MSB accepted the responsibility not to do or to do any of the eleven things alleged. In short, there is no evidence of a contract pertaining to any of the actions alleged.

Principle among the allegations of Miriam Moy are the fact that on one occasion, loan proceeds were dispersed to pay various MSB charges incurred by Perry Moy and the balance of $50,000.00 dispersed to Perry Moy without requiring a payment to the home mortgage delinquency. There is no evidence of any agreement by the bank to treat Perry Moy's individual loan disbursements in any particular way. Likewise there is no evidence of any rule, regulation, habit or custom that required the bank to do anything pertaining to the home loan with Perry Moy's other loan proceeds.

There is, also, no evidence of any prior agreement that would require MSB to credit any random loan payments made by Perry Moy to the home mortgage. In the absence of any advance agreement, MSB was entitled to apply any money paid to it on account of Perry Moy's debt at the bank on any outstanding loan that he had without limitation. *[Farm Credit Bank of St. Louis v Biethman, 262 Ill.App.3d 614 (1994)].*

Finally, there is no proof of recoverable damages.

FINDINGS.    The home mortgage on the property located at 8220 Crystal Springs Rd., Crystal Lake, Illinois has been in default since November 2009. McHenry Savings Bank is entitled to a judgment of foreclosure on the note and mortgage. Unpaid interest on the note may only be calculated from November 1, 2009, the date of actionable default.

There has been no breach of contract proven by the evidence.

There has been no proof of violation of the Consumer Fraud Act.

IT IS THEREFORE ORDERED that the above entitled cause is continued to August 3, 2016 at 9:00 am for presentation of orders in conformity with this opinion.

Dated: July 19, 2016                                 Enter _____
                                                                    JUDGE

4

07/19/2016  15:39    8153380248                                                          PAGE  06/06

Distribution:

Smith Amundson                          Jeffrey Gutman
2460 Lake Shore Drive                   4018 North Lincoln Avenue
Woodstock, Illinois 60098               Chicago, Illinois 60618

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Western Division

| | | |
|---|---|---|
| In Re: | ) | BK No.:   12-81963 |
| | ) | |
| MIRIAM L. MOY, | ) | Chapter:  7 |
| | ) | Honorable Thomas M. Lynch |
| | ) | |
| | ) | Kane |
| Debtor(s)   ) | | |

**ORDER**

This matter having come to be heard on McHenry Savings Bank's Motion to Modify Discharge Injunction, due notice having been given, and the Court being duly advised in the premises:

IT IS HEREBY ORDERED THAT:

A. The Motion is hereby granted in its entirety; and

B. The discharge injunction imposed under Section 524 of title 11 of the United States Code is modified, permitting McHenry Savings Bank to proceed to collect from Miriam L. Moy those certain post-petition attorneys' fees awarded it in successfully defending the Counterclaim (as that term is defined in the Motion).

Enter:

Dated:                                                           United States Bankruptcy Judge

**Prepared by:**
William S. Hackney, ARDC No. 06256042
SmithAmundsen LLC
150 North Michigan Ave.; Suite 3300
Chicago, Illinois  60601
Telephone:  312.894.3200
whackney@salawus.com

Rev: 20151029_bko

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 12 B 81963 |
| | ) | Chapter 7 |
| Miriam L. Moy, | ) | Hon. Judge Thomas M. Lynch |
| | ) | Hearing Date: Mon., Sept. 26, 2016 |
| Debtor. | ) | Hearing Time: 9:30 a.m. |

### AMENDED NOTICE OF HEARING

To:  See Attached Service List

**PLEASE TAKE NOTICE** that on Monday, September 26, 2016, at 9:30 a.m., or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable Judge Thomas M. Lynch, or any judge sitting in his stead, in courtroom 3100 of the United States Courthouse, located at 327 South Church Street, in Rockford, Illinois, and present **MCHENRY SAVINGS BANK'S MOTION TO MODIFY DISCHARGE INJUNCTION**, a copy of which is attached hereto and is hereby served upon you.

Dated: September 15, 2016

MCHENRY SAVINGS BANK

By: /s/ William S. Hackney<br>
One of its Attorneys

William S. Hackney, ARDC No. 06256042
SMITHAMUNDSEN LLC
150 North Michigan Avenue, Suite 3300
Chicago, Illinois  60601-7524
Telephone:  312.894.3200
whackney@salawus.com

## CERTIFICATE OF SERVICE

I, William S. Hackney, an attorney, hereby certify that I caused true and correct copies of the attached **AMENDED NOTICE OF HEARING** and McHenry Savings Bank's Motion to Modify Discharge Injunction to be served on all parties listed on the attached service list via the Bankruptcy Court for the Northern District of Illinois' CM/ECF system, or via Federal Express, as indicated, on this the 15th day of September, 2016.

/s/ *William S. Hackney*

## SERVICE LIST

*Via Federal Express*

Miriam Moy
8220 Crystal Springs Road
Woodstock, IL  60098

*Via ECF*:

Diane Brazen Gordon
diane@brazengordon.com

Jeffrey K. Gutman
jeffreykg4018@aol.com

Ean L Kryska
ean.kryska@abm.com

Joseph D Olsen
Jolsenlaw@comcast.net
jolsenlaw@aol.com

Tiffany Rodriguez
trodriguez@bslbv.com

Craig A Willette
craigwillette@comcast.net