UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy No. 12-B-81963 |
| MIRIAM L. MOY, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | Judge Lynch |
| | ) | |

## MEMORANDUM DECISION

McHenry Savings Bank seeks to modify the discharge injunction in this case to permit it to proceed against Miriam in state court to recovery certain attorney's fees. This court previously granted the Bank's request to reopen this Chapter 7 case to consider its motion. For the reasons set forth below, the pending motion to modify (ECF No. 166) is DENIED and the Clerk may close this case.

## I. JURISDICTION

The court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The Bank seeks either clarification of or modification to the discharge issued by this court pursuant to 11 U.S.C. §§ 524 and 727. Adjudication of this motion is therefore a matter arising under the Bankruptcy Code and a core proceeding pursuant to 28 U.S.C. § 157(b)(2) (I) and (O). A bankruptcy court has the power and jurisdiction to enforce or modify its own injunctions including the discharge injunction. *See, e.g., Hendrix v. Page (In re Hendrix)*, 986 F.2d 195, 198 (7th Cir. 1993) (holding that if discharge injunction "erroneously enjoined" litigation against insurer, "the court had the power ... to modify the injunction in order to correct the error"); *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 179 (7th Cir. 1994) (bankruptcy court "retained jurisdiction to modify the discharge injunction"). Although the bankruptcy case closed, the court "has continuing authority to enforce its orders after a case has been closed." *In re Rockford Prods. Corp.*, 741 F.3d 730, 732 (7th Cir. 2013) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009)). As such, this court has constitutional and jurisdictional authority to enter a final order.

## II. PROCEDURAL BACKGROUND AND FINDINGS OF FACT[1]

The Bank holds a note and mortgage given it by the Debtor and her ex-spouse, Perry Moy. The couple fell into arrears on the loan and the Bank commenced a foreclosure action on November 17, 2009 in state circuit court on the mortgage of the by-then estranged couple's property in Woodstock (the "Crystal Springs Property"). Ms. Moy separately raised a number of defenses and counterclaims in the foreclosure case and trial of the matter was pending on April 20, 2012 when Perry Moy filed his petition for relief under Chapter 13 of the Bankruptcy Code. (Case No. 12-B-81564.)

The creditors of Miriam Moy commenced this involuntary Chapter 7 case shortly afterward, on May 16, 2012. Three months later, on August 20, the order for relief entered. In her bankruptcy schedules Ms. Moy listed her interest in the Crystal Springs Property and scheduled McHenry Savings Bank as a secured creditor. She also listed her "counterclaim against McHenry Savings Bank in case no. 09 CH 2444," assigning to it a value "in excess of $100,000.00." Ms. Moy also attached a copy of her amended counterclaim in the foreclosure case to her bankruptcy schedules. An order of discharge was entered in the case on March 12, 2013. McHenry Savings Bank timely filed its proof of claim in which it asserted a debt of $610,632.35, the entire amount being secured by the Crystal Springs Property.

Miriam Moy received her Chapter 7 discharge on March 12, 2013. Revising his initial report of assets, the Chapter 7 trustee ultimately determined in her case after "diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate [that] "there is no property available for distribution from the estate over and above that exempted by law" and filed a no-asset report. (ECF No. 164.) The clerk closed her case on May 29, 2014 after which the debtor's interest in the Crystal Springs Property and her counterclaim against the Bank were deemed abandoned by the Chapter 7 trustee pursuant to Section 554(c).

McHenry Savings Bank subsequently moved for relief from the automatic stay with respect to the foreclosure proceeding in Perry Moy's Chapter 13 case. It also sought relief from the co-debtor stay imposed with respect to Miriam pursuant to Section 1301(c). While neither Perry nor the Chapter 13 Trustee objected to the Bank's motions, Miriam objected to both. Her objections were overruled, and

---

[1] The following sets forth the court's findings of fact as required by Fed. R. Bankr. P. 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

this court entered an order for relief allowing the Bank to proceed in the foreclosure action. *In re Perry Moy*, 515 B.R. 709 (Bankr. N.D. Ill. 2014).

With that the foreclosure proceedings resumed. It is not disputed that Ms. Moy first asserted her counterclaim against the Bank pre-petition. Instead, the Bank now points to the debtor's motion to reopen which Miriam filed in the foreclosure case on or about September 9, 2014, after she received her discharge. She brought this motion so that she could introduce an expert report in support of her claims and defenses in the state court proceedings on the foreclosure and her counterclaim. It is not disputed that Ms. Moy's expert did not testify at the trial held in the state court. "After a full trial" the state court issued an opinion and order denying Ms. Moy's counterclaims and finding that the Bank was entitled to a judgment of foreclosure. (Bank's Supp. Reply at 1; ECF No. 176.) Ms. Moy subsequently filed a motion to reconsider which, apparently, remains pending before the state court.

In the motion pending before this court, the Bank relies on a provision in the note secured by the Crystal Springs Property which states that the holder possesses "the right to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law [including] reasonable attorneys' fees." The Bank asserts that the mortgage contains a similar provision permitting the Bank to "charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees." Admitting "that it is not legally authorized to collect from the Debtor the amount of the attorneys' fees it incurred regarding the Foreclosure Action or the Counterclaim prior to the Moy Order for Relief because of the Debtor's discharge," the bank instead asks this court to modify the discharge injunction to permit it to recover "the amount of attorneys' fees that it incurred defending the Counterclaim post-petition" from Ms. Moy as a personal liability. (Mot. to Modify Discharge Injunction, ¶¶ 18 -19, ECF No. 166.)

### III. <u>DISCUSSION</u>

#### A. The Bank Seeks to Recover a Pre-Petition Claim that Was Discharged.

McHenry Savings Bank seeks to except from Ms. Moy's discharge her pre-petition contractual obligation to indemnify it for certain attorney's fees it incurs in connection with the note and mortgage. The Bank argues that because it is seeking only the attorneys' fees it incurred following the entry of the Miriam Moy Order for Relief in connection with the Debtor's amended counterclaim, the contractual obligation should be considered to be a post-petition claim that is not subject to the

discharge. However, "claims" which are discharged under the Bankruptcy Code are broadly construed to include contingent obligations as well as liabilities that ripen before the petition date. Because the Debtor's indemnification obligation is a term of a contract which the parties entered into pre-petition, the Debtor's obligation to pay attorneys' fees under that term constitutes a pre-petition claim subject to discharge.

A bankruptcy discharge voids any judgment "to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727" and "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a). Neither the Bank nor Ms. Moy contend that the Bank's foreclosure action violates the discharge to the extent it seeks *in rem* relief against the Crystal Springs Property. But the Bank now seeks to collect its attorneys' fees incurred in that action not only from proceeds of a sale of the Crystal Springs Property but also directly from Ms. Moy as a personal liability to the extent the proceeds of its collateral interest prove insufficient.

It is undisputed that Ms. Moy received a discharge under Section 727(a) of the Bankruptcy Code on March 12, 2013. The Bank understandably does not seek to vacate her discharge order. Nor has the Bank allege any grounds under Section 523 by which its debt may be excepted from discharge. Except as provided under Section 523, the Chapter 7 discharge:

> discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

11 U.S.C. § 727(b). Under the Bankruptcy Code, the term "debt" means "liability on a claim." 11 U.S.C. § 101(12). The code in turn broadly defines "claim" to include any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). Thus, "claims" in bankruptcy include not only claims that had accrued and which could be brought under state law as of the petition date, but also claims that were contingent or unmatured as of such date. *St. Catherine Hosp. of Ind., LLC v. Ind. Family & Soc. Servs. Admin.*, 800 F.3d 312, 315 (7th Cir. 2015).

The Bankruptcy Code provides that a bankruptcy claim may be disallowed if unenforceable under applicable law, but only "for a reason *other than because such claim is contingent or unmatured.*" 11 U.S.C. § 502(b)(1) (emphasis supplied). Even though the full amount of such claim may be unknown until the contingency occurs, there "shall be estimated for purpose of allowance . . . any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c). If the estimate turns out to be inaccurate, the holder of the contingent claim may request reconsideration of the allowance pursuant to Section 502(j) and Bankruptcy Rule 3008. *See, e.g., Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.*, 954 F.2d 1, 8 n.8 (1st Cir. 1992).

Contingent claims include those dependent "upon some future event, which may or may not happen after the filing of a bankruptcy petition." *St. Catherine Hosp.*, 800 F.3d at 317. In determining whether a contingent liability constitutes a pre-petition "claim" in bankruptcy, courts generally find a claim arose "at the earliest point possible" in order to enable "the bankruptcy court to bring before it as many claims against the debtor as possible, and from there to 'equitably distribute property [among the creditors] and assure the debtor a fresh start.'" *Id.* at 317-18 (citing *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 974 F.2d 775, 782 (7th Cir. 1992)). Under the Bankruptcy Act of 1898 contingent or unliquidated claims not capable of either reasonable or expeditious valuation were disallowed as "unprovable." But the "inequitable results occasioned by the 'provability' requirement under the Bankruptcy Act—precluding the would-be creditor from participating in distribution and the debtor from obtaining a discharge of the debt—ill served the two principal legislative policies federal bankruptcy law was meant to foster." *In re Hemingway Transp., Inc.*, 954 F.2d at 8. In the 1978 Bankruptcy Code, Congress adopted a broader definition of "claim" to expand both the group of creditors entitled to share in distribution of the estate or otherwise participate in the bankruptcy and the scope of the discharge afforded the debtor. H.R. Rep. No. 95–595, at 309, 1978 U.S.C.C.A.N. 5963, 6266 (describing the definition of "claim" as the "broadest possible," noting: "[b]y this broadest possible definition, and by the use of the term throughout title 11, ... the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court."). *See also Johnson v. Home State Bank*, 501 U.S. 78, 86 (1991) ("In fashioning a single definition of "claim" for the 1978 Bankruptcy Code, Congress intended to 'adop[t] *an even broader* definition of claim than [was] found in the [pre-1978 Act's] debtor rehabilitation chapters.'").

A debtor's pre-petition contractual obligation to indemnify a counterparty for future attorneys' fees incurred in connection with enforcing the agreement constitutes a contingent claim, conditioned upon such fees being incurred. *See, e.g., Ogle v. Fid. & Deposit Co. of Md.*, 586 F.3d 143 (2nd Cir. 2009) (bond issuer could assert claim in bankruptcy for post-petition attorneys' fees incurred in post-petition litigation against the debtor based on pre-petition indemnification provision); *SNTL Corp. v. Centre Insur. Co. (In re SNTL Corp.)*, 571 F.3d 826, 843 (9th Cir. 2009) ("Here, the parties' execution of a prepetition agreement containing an attorneys' fees provision gives rise to a contingent, unliquidated attorney-fee claim."). In bankruptcy "the term 'claim' is broad enough to encompass an unliquidated, contingent right to payment under a prepetition indemnification agreement executed by the debtor, even though the triggering contingency does not occur until after the filing of the petition under the Bankruptcy Code." *Hemingway Transp., Inc.*, 954 F.2d at 8. This includes claims for attorney's fees authorized by a pre-petition contract and incurred in post-petition litigation. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec.*, 549 U.S. 443, 451 (2007) (rejecting the suggestion that it find an unsupported exception that would disallow attorney's fees "for litigating issues 'peculiar to federal bankruptcy law'").

A number of courts have rejected the argument that fees incurred defending post-petition litigation by a debtor-in-possession or bankruptcy trustee should be granted administrative expense priority rather than being treated as general unsecured pre-petition claims. *See, e.g., Hemingway Transport, Inc.*, 954 F.2d at 5; *Abercrombie v. Hayden Corp. (In re Abercrombie)*, 139 F.3d 755, 758-59 (9th Cir. 1998). In *Hemingway Transport* the court of appeals noted that, as a general rule, a request for priority payment as an administrative expense is granted only if "the right to payment arose from a post-petition transaction with the debtor estate." 954 F.2d at 5. While a trustee's attorney's fees might be an actual and necessary cost of pursuing the litigation, the creditor's right under the pre-petition agreement with the debtor for indemnification of the creditor's own fees is not.[2] These cases make clear that the mere imposition of a post-petition burden on a creditor is not justification to override the clear text and structure of the Bankruptcy Code, which instead treats obligations like the one at issue here as a pre-petition claim.

It is important to note that the Bank bases its claim solely upon the parties' pre-petition contract. The pending matter, therefore, is readily distinguishable from those cases where the direct

---

[2] The court in *Hemingway* held that the right to indemnification for post-petition litigation initiated by a Chapter 7 trustee is not an actual and necessary cost of preserving the estate where the right arises from a pre-petition agreement. *Id.*

source for the debtor's liability for the incurred fees is solely the debtor's post-petition conduct and not any a pre-petition agreement. In a recent decision, *In re Ruben,* for example, the Seventh Circuit found that attorney's fees awarded in a post-petition arbitration panel are not subject to discharge. 774 F.3d 1138 (7th Cir. 2014). The court found that the direct source of the debtor's liability for the fees incurred by his adversary in *Ruben* was not his pre-petition contract but rather the rules of the American Arbitration Association governing the parties' post-petition arbitration. The debtor agreed to arbitrate and the arbitration was initiated after the debtor filed his bankruptcy petition. 774 F.3d at 1139. Under the applicable rules of the AAA, expenses of the arbitration "shall be borne equally by the parties, unless they agree otherwise or *unless* the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties." *Id.* Under those rules the arbitration panel awarded all costs against the debtor. The Seventh Circuit concluded that by "asking to be allowed into the arbitration, Ruben voluntarily exposed himself to assessments the amount of which he could not have calculated in advance." 774 F.3d at 1140. *See also Garrett v. Cook,* 652 F.3d 1249 (10th Cir. 2011) (award of attorneys' fees pursuant to 28 U.S.C. § 1447(c) against a debtor who improperly sought to remove the case to state court several years after filing his bankruptcy petition is a post-petition obligation not subject to discharge). In both *Ruben* and *Garrett,* the debtor's post-petition actions in litigation, not a pre-petition agreement, was the direct source for the fee award. It is in this sense that the court in *Ruben* stated that "even if a cause of action arose pre-petition, the discharge shield cannot be used as a sword that enables a debtor to undertake risk-free [post-petition] litigation at others' expense." 774 F.3d at 1141 (quoting *In re Ybarra,* 424 F.3d 1018, 1026 (9th Cir. 2005)).

Here, on the other hand, the Bank identifies no post-petition source for its claim that Ms. Moy is liable for the attorneys' fees it incurred post-petition. Under "the bedrock principle known as the American Rule ... [e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC,* 135 S. Ct. 2158, 2164 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 252-53 (2010)). Ms. Moy was not enabled by the discharge to "undertake risk-free" litigation at the Bank's expense any more than any other litigant under the American Rule. If there are policy concerns that not requiring the unsuccessful debtor to reimburse the prevailing party its attorney's fees might invite abuse or the pursuit of frivolous claims, they concern the American Rule and not the bankruptcy discharge. Relying on the contract exception to this rule, McHenry Savings argues that the debtor's pre-petition agreement to pay the Bank's legal fees was not discharged because the Bank seeks to recover only fees it incurred as a result of Ms. Moy

pursuing her counterclaim post-petition. It is not disputed the only basis for its claim is the fee-shifting term contained in the parties' pre-petition agreement.

There is no dispute that the direct source for Ms. Moy's liability for the fees incurred by the Bank as a result of the Debtor's pursuit of her counterclaims is the pre-petition contract. That obligation, no differently than her other personal obligations under that agreement, is subject to discharge.

### B. The Bank's Fees Are Not Excepted from Discharge as a Result of "Return to the Fray."

In its motion the Bank suggests that an exception recognized by some courts to the discharge of a claim based on a pre-petition fee-shifting agreement may be applicable here. *See Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998), and *Ybarra*, 424 F.3d 1018. The Bank argues under these decisions that if a debtor either commences new litigation post-petition or "returns to the fray" to continue to litigate pre-petition actions after the petition date, the debtor may be held personally liable for the attorney's fees incurred in defending such actions under a pre-petition fee-shifting agreement despite the discharge.

In the first case cited, the debtor filed a Chapter 7 petition after defaulting on a loan secured by two pieces of real estate. *Siegel*, 143 F.3d at 528. The lender had foreclosed on one of the parcels before the petition date. After Siegel received a discharge and the bankruptcy case closed, the lender foreclosed on the second property. The debtor then filed an action in state court against the lender for tort and breach of contract in connection with the foreclosures, which the lender removed to federal court where the lender eventually received summary judgment. The district court also awarded the lender its attorney's fees as provided for under the loan agreements. In its affirmance of the award, the court of appeals recognized that lender's contractual indemnity claim could constitute a pre-petition contingent "claim" in bankruptcy. *Id.* at 532-33. But the court distinguished between a contingent claim where the liability "was contingent upon what others might do" as opposed to a claim contingent upon what the debtor might do. *Id.* at 533. The court did not cite to the Bankruptcy Code the distinction it drew and its holding, concluding instead that it would be unfair to allow the debtor to "use bankruptcy to discharge all of his obligations under his contracts with Freddie Mac and still personally retain all of his rights arising out of those contracts." *Id.* at 534.[3]

---

[3] It is unclear what "rights arising out of those contracts" the court was referring to. The Seventh Circuit has generally stated that "security agreements are not executory contracts within the meaning of § 365 of the Bankruptcy Code." *Mitchell v. Streets (In re Streets & Beard Farm P'ship)*, 882 F.2d 233, 235 (7th Cir. 1989).

In the Bank's second case, *Ybarra*, the Ninth Circuit rejected a debtor's attempt to distinguish *Siegel* because the litigation out of which the fees award was granted had commenced pre-petition and debtor Ybarra had "persuaded the state court to set aside the dismissal" of the action post-petition. Relying on *Siegel*, the court concluded that whether "attorney fees and costs incurred through the continued prosecution of litigation initiated pre-petition may be discharged depends on whether the debtor has taken affirmative post-petition action to litigate a prepetition claim and has thereby risked the liability of these litigation expenses." 424 F.3d at 1026.

This court is not persuaded that the "returning to the fray" doctrine should be applied to the present case as suggested by the bank. First, we note that the Supreme Court has rejected judicially crafted exceptions based on general notions of "fairness" that are inconsistent and unsupported by the language of the Bankruptcy Code. For example, the Supreme Court held in *Travelers Casualty* that "[t]he absence of textual support is fatal for the [Ninth Circuit's] *Fobian* rule," stating that where Congress sets forth express provisions for disallowance of particular types of claims, the "absence of an analogous provision excluding the category of fees covered by [the *Fobian* rule] suggests that the Code does not categorically disallow them." 549 U.S. at 453. When a "statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004). *See also Puerto Rico v. Franklin Cal. Tax-Free Trust*, 136 S. Ct. 1938, 1946 (2016) ("The plain text of the Bankruptcy Code begins and ends our analysis."); *Fla. Dept. of Rev. v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 52 (2008) (It "is not for us to substitute our view of ... policy for the legislation which has been passed by Congress.").

The statutory inclusion of contingent claims which are contingent within the broad category of claims to be dealt with in a bankruptcy case does not appear to be unintentional. The legislative history of the 1978 Bankruptcy Code indicates congressional intent that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in bankruptcy." *St. Catherine Hosp.*, 800 F.3d at 315 (quoting *Grady v. A.H. Robins Co.*, 839 F.2d 198, 202 (4th Cir. 1988). Narrowing the definition of "claim" to protect the right of creditors to pursue any remaining assets of a debtor post-discharge may limit the ability of creditors to share in distributions from the bankruptcy estate. Inasmuch as the term "claim" is specifically defined in the Bankruptcy Code's general definitions in Section 101 and not specifically modified elsewhere, there appears to be scant statutory justification for according different meanings as to a "claim" when dealing with its discharge as opposed to its

allowance. As the Supreme Court has noted, courts "are generally reluctant to give the 'same words a different meaning' when construing statutes, and we decline to do so here based on policy arguments." *Bank of America, N.A. v. Caulkett*, 135 S. Ct. 1995, 2000-01 (2015) (quoting *Pasquantino v. U.S.*, 544 U.S. 349, 358 (2005)).

In the context of discharge, the Seventh Circuit has rejected interpretations of the term "contingent" that would exclude contingencies within the debtor's control. For example, *In re Rosteck*, 899 F.2d 694 (7th Cir. 1990), like the present case concerned a debtor was in control of the post-petition contingency, in that case continuing to occupy a condominium unit subject to periodic assessments. *Rosteck* held that post-petition condominium assessment was discharged because the obligation to pay future assessments under the parties' pre-petition agreement constitutes a pre-petition contingent claim. In reaching this holding the Seventh Circuit rejected the condominium association's equitable argument that allowing "debtors to reside in their homes as long as they wish, unencumbered by the obligation to pay assessments that their fellow condominium owners must pay" would give them not only a "fresh start" but a "head start." *Rosteck*, 899 F.2d at 697. Acknowledging that such possibility is "troubling," the court nevertheless concluded that "the broad language Congress used in the Bankruptcy Code compels the result we reach. We have no power to change that language to reach a more palatable result. Contingent debts are still debts, and Congress has not exempted the type of debt in this case from discharge." *Id.*

Moreover, as the Seventh Circuit noted in *Rosteck*, viewing the post-discharge relationship between the debtor and the creditor as unfair ignores other systemic protections of creditors in bankruptcy and the general balancing of interests.

> [The creditor's] fear may be largely unfounded. If the trustee can sell the debtor's interest in his condominium for cash to pay creditors, the trustee will do so, and thus 'it seems safe to conclude [the debtor's] scot-free residence would be short lived.' And, as happened in this case, parties holding liens on the condominium . . . can foreclose those liens and end the debtor's possession and ownership.

*Id.* Here, too, Ms. Moy was able to pursue her counter-claim and foreclosure defenses against the Bank because the Chapter 7 trustee had abandoned the estate's interest in the property and related causes of action.

Exceptions to discharge "are confined to those plainly expressed in the Code ... and are narrowly construed in favor of the debtor." *In re Chambers*, 348 F.3d 650, 654 (7th Cir. 2003). *See also Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 963 (7th Cir. 2004); *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998). In this case, the Bank does not allege that the fees it seeks to recover may be excepted from

discharge under Section 523. And as the Seventh Circuit has noted in the context of a Chapter 7 debtor's indebtedness for attorneys' fees, "[n]othing in the Code permits a categorical exception for any kind of debt other than one listed in § 523—and legal fees are not on that list." *Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1129 (7th Cir. 2003).

Indeed, the Ninth Circuit last year drew back from an expansive interpretation of *Siegel* and *Ybarra* in *Picerne Constr. Corp. v. Castellino Villas, A. K. F. LLC (In re Castellino Villas, A. K. F. LLC)*, to find that a claim for post-petition attorneys' fees based on a pre-petition contract was discharged. 836 F.3d 1028 (9th Cir. Sept. 6, 2016). The court in *Castellino Villas* held that normally if a creditor incurs attorneys' fees post-petition "in connection with exercising or protecting a prepetition claim that included a right to recover attorneys' fees, the fees will be prepetition in nature, constituting a contingent prepetition obligation that became fixed post-petition when the fees were incurred." 836 F.3d at 1034 (quoting *In re SNTL Corp.*, 571 F.3d 826, 844 (9th Cir. 2009)). In doing so it applied a "fair contemplation" test for determining whether a contingent or unmatured claim has sufficiently arisen as of the petition date to constitute a pre-petition claim. 836 F.3d at 1034. Under this test, "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *Id.* (quoting *In re SNTL Corp.*, 571 F.3d at 839). The court reasoned that, a debtor's decision "to eschew the fresh start provided by bankruptcy" and instead engage in "a whole new course of litigation" post-petition that "was not in the fair contemplation of the parties' pre-petition" should not be treated as a pre-petition claim. *Id.* at 1036. Accordingly, the court rejected as "inconsistent with our fair contemplation test" the creditor's argument that the debtor's decision to continue "to litigate a prepetition claim after discharge, and [to take] any affirmative steps beyond what is necessary to extricate itself from the litigation" should be treated as a non-dischargeable "return to the fray." *Id.*

In the present case, even were we to find this of this court-made exception to discharge applicable, the outcome would not change. It is clear that as of the petition date McHenry Savings Bank should have fairly contemplated Ms. Moy's counter-claim and indeed did so. It is uncontroverted that Ms. Moy raised her defenses and filed her counterclaim in the state foreclosure case before she commenced her Chapter 7 case. The debtor scheduled her counterclaim against the Bank as an asset in her bankruptcy schedules and listed the Bank as a holder of a secured claim, marking such claim as "disputed" and specifically referencing her dispute and counterclaim in her bankruptcy schedules. She resisted the Chapter 7 trustee's motion to settle the counterclaim, contending that it was worth

more than the proffered settlement amount.  The Chapter 7 trustee eventually abandoned the counter claim to Ms. Moy, and the Bank has not contended that she materially altered or amended the counter claim or raised new assertions when the foreclosure case resumed.  Therefore, even under the Ninth Circuit's *Ybarra* rule, as modified by its later ruling in *Catellino Villas*, it is clear that Ms. Moy's future actions in the foreclosure proceedings were within the "fair contemplation" of McHenry Savings Bank as of the petition date.

Accordingly, we find that the debtor's contractual obligation to reimburse the Bank the attorney fees it incurred in connection with the post-petition proceedings on her counterclaim in the foreclosure case is a pre-petition contingent claim that was discharged in her bankruptcy.

## CONCLUSION

For the forgoing reasons, the Motion of McHenry Savings Bank to modify the discharge is denied.  A separate order will be issued accordingly concurrent with this Memorandum Decision pursuant to Federal Rule of Bankruptcy Procedure 7058.

January 13, 2016                    ENTER:    /s/ Thomas M. Lynch

                                              _____
                                              Thomas M. Lynch
                                              United States Bankruptcy Judge